FOEOLETINI and UPUTAUA ALO, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Alo v. Commissioner
Docket No. 4754-75
United States Tax Court
T.C. Memo 1976-397; 1976 Tax Ct. Memo LEXIS 10; 35 T.C.M. (CCH) 1795; T.C.M. (RIA) 760397; December 27, 1976, Filed *10 1. Petitioners expended sums of money in order to provide support for various relatives. Held, petitioners have failed to show that their son, Foe, Jr., who was over 19 years of age had gross income of less than $750. The dependency exemption claimed with respect to Foe, Jr. is therefore denied. Sec. 151(e). Held further, petitioners have failed to prove that they provided more than one-half of the support of the other relatives and the claimed dependency exemptions are denied. Sec. 152. 2. Petitioners claimed various miscellaneous deductions. Held, the amounts allowable determined. Foeoletini and Uputaua Alo, pro se. Charles W. Jeglikowski, for the respondent. STERRETT
MEMORANDUM FINDINGS OF FACT AND OPINION STERRETT, Judge: Respondent determined deficiencies in petitioners' Federal income taxes for the calendar years 1972 and 1973 in the respective amounts of $2,562 and $1,864.25. Due to concessions by the parties the issues for decision are: (1) whether petitioners are entitled to certain dependency exemptions, and (2) whether petitioners have substantiated certain itemized deductions. FINDINGS OF FACT Some of the facts have been stipulated and are so found. The stipulation of facts, together with the exhibits attached thereto, are incorporated herein by this reference. Petitioners Foeoletini Alo (hereinafter Alo) and Uputaua Alo (hereinafter Mrs. Alo), husband and wife, were residents of Carson, California at the time they filed their petition *12 herein. Petitioners timely filed joint federal income tax returns for the calendar years 1972 and 1973. Alo Foa, the father of Alo, is a resident of Samoa. In March, 1972 he traveled to the United States to visit various relatives in this country. He lived with petitioners for approximately 4 months at which time he went to San Francisco and stayed with his daughter Pago for approximately 3 weeks. After returning briefly to petitioners' home he was driven by petitioners to Oceanside, California, where he resided with his daughter Matavai for 1 week. He subsequently returned to petitioners' residence and visited for an additional 3 months at which time he returned to Samoa. It is Samoan custom that children care for their parents. Accordingly, Alo Foa was cared for and received shelter and support from whomever he visited. Petitioners paid for the cost of his transportation to San Francisco. In May, 1973 Alo Foa, with his grandson, again came to the United States. His air fare was paid by his two daughters, Sini and Matavai. During 1973 he resided with petitioners for approximately 5 months. He also visited his daughter Pago for several days and his daughter Matavai *13 for 1 week. Petitioners paid for his return flight to Samoa. In Samoa Alo Foa lives on a plantation in Pago Pago. He has no independent source of income and relies entirely upon relatives for support. Tifilifi, Mrs. Alo's mother, is a resident of Samoa where she lives with her husband, a minister, in a home built for them by their fellow villagers. In accordance with Samoan custom members of the congregation also provide food and money for their support. Other sources of support are their relatives. In May, 1972, Tifilifi arrived in the United States and stayed in petitioners' home until December, 1972. She was not in the United States during 1973. Sini, Alo's sister, is a Samoan resident. Her husband is employed. She arrived in the United States in June, 1972, and resided with and was supported by petitioners for approximately 3 months. During her visit to the United States she also visited and was supported by Matavai for 1 week. Mataua, Alo's sister, normally lives in Samoa. Her husband is employed. During 1972 she traveled to the United States to visit relatives. In so doing she stayed with petitioners for 4 months and Matavai for 1 week. In each instance *14 the relatives with whom she stayed supported her. Her husband paid her air fare to the United States and petitioners paid for her return trip.
In June, 1973, Mataua again visited petitioners with whom she resided until October, 1973 when she returned to Samoa. Her husband paid her air fare to the United States and petitioners paid for her return flight to Samoa. Tupualii, Mrs. Alo's sister, normally resided in Samoa in the home of her parents. However, in 1972 she lived with petitioners for 6 months. Her fare to and from the United States was paid by petitioners. During 1972 she was approximately 18 years old and, while in Samoa, attended a Catholic school. The tuition was paid by her father. Tupualii again visited the United States in 1973 and resided with petitioners from May until September. On this trip the roundtrip air fare was paid one-half each by petitioners and by her church. Uitime, brother of Mrs. Alo, resided in Samoa with his parents. Although employed he was in ill health and received most of his support from his parents and other relatives, including petitioners. In 1973 he resided with and was supported by petitioners for approximately 6 months. Petitioners *15 paid his roundtrip air fare to enable him to make the trip. Foe, Jr., petitioners' son, was 20 years old in 1972. During that entire year he resided with petitioners and spent most of that year attempting to secure a job. Toward the close of 1972 he became employed. However, he earned very little money in that year and turned over whatever earnings he did receive to petitioners. Frank, another son of petitioners, was 18 years old in 1972. In October of that year he joined the U.S. Navy. At the conclusion of training in January, 1973, he returned to petitioners' home. Harry, another son of petitioners, was 17 years old in 1972 and graduated from high school that June. He resided in petitioners' home until August, 1972, at which time he enlisted in the U.S. Marine Corps.He returned home in December, 1972 and gave petitioners a check from the Marine Corps in the amount of approximately $400. On their 1972 income tax return petitioners claimed 15 personal exemptions, 13 of which were disallowed by respondent in his notice of deficiency. Respondent has since conceded that petitioners are entitled to exemptions for the year 1972 for the following of their children: Tina, *16 Uiti, Pago, Aimiti, and Michael. The following schedule shows the individuals and their respective relationships to petitioners with respect to whom petitioners' claimed exemptions for 1972 are still at issue: Individual
Relationship
Foe, Jr.hSon
Frank
Son
Harry
Son
Alo Foa
Alo's Father
Tifilifi
Mrs. Alo's Mother
Sini
Alo's Sister
Mataua
Alo's Sister
Tupualii
Mrs. Alo's Sister
On their 1973 income tax return petitioners claimed exemptions for the following individuals, among others: Alo Foa, Tifilifi, Mataua, Tupualii, and Uitime (Mrs. Alo's brother). Respondent, in his notice of deficiency, disallowed these exemptions. Alo is a machine rigger in the Navy Shipyard. His employment requires him to purchase and wear safety glasses. Mrs. Alo is a nurse. In connection with her job she purchased 5 or 6 uniforms in 1972 which she had dry cleaned. The hospital did not give her an allowance for cleaning. In 1972 and 1973 she attended Harbor College to qualify as a registered nurse and purchased several textbooks. Petitioners, in addition to using their telephone for personal use, made calls during 1973 on behalf of their church. The following *17 table shows the nature and amount of the items petitioners deducted on their 1972 return, the amounts disallowed by respondent in his notice of deficiency, the amounts conceded by respondent and the amounts remaining in issue: [1]
Amount Claimed
Amount Conceded
Amount Remaining Item and Year
and Disallowed
by Respondent
In Issue
1972
Small tools
$ 65
$ --
$ 65
Shoes and gloves
50
--
50
Uniforms
190
--
190
Laundry
200
--
200
Books
50
--
50
1973
Taxes
2,094
1,895
199
Interest
2,802
2,683
119
Telephone
60
--
60
Laundry & Uniforms
305
--
305
Books
50
50
OPINION The first issue for decision is whether petitioners are entitled to dependency exemptions pursuant to sections 151(a) and 151(e) [2] for the years 1972 and 1973. Section 152 defines dependent for purposes of section 151 as one of an enumerated group of individuals "over half of whose support * * * was received from the taxpayer". Together these provisions require petitioners to *18 be entitled to a dependency exemption to demonstrate: (1) the amount of support they furnished each dependent; (2) that such support constituted more than one-half of the total support each dependent received; and (3) that each dependent had gross income less than $750 or was a child of petitioners who had not attained the age of 19 or was a student. Section 151(e), 152; . After a careful review of the record we conclude that petitioners have failed to make the required showing. With respect to those relatives other than petitioners' son, Foe, Jr., petitioners' evidence comprised their testimony that they contributed food, shelter, and money to the support of each claimed dependent. We found petitioners to be credible witnesses and commend their efforts *19 to care for both visiting and elderly relatives. Unfortunately they have failed to demonstrate either the total amount expended for the support of each relative or the amount they expended therefor. While such amounts need not be proved to the last dollar there must appear in record convincing evidence that petitioners have furnished more than one-half of each claimed relative's support. We are therefore constrained to hold they are not entitled to the claimed exemptions for Alo Foa, Tifilifi, Sini, Mataua, Tupualii, Uitime, Frank, and Harry. We do believe that the evidence convincingly establishes that petitioners contributed over one-half of the support received by Foe, Jr. in 1972. Although no precise amounts were proffered by petitioners it is not in dispute that Foe, Jr. was unemployed for 11 months in that year and resided with petitioners for the entire year. Foe, Jr., however, was employed during December, 1972 and attained the age of 20 in that year. Hence it was incumbent upon petitioners to demonstrate that his gross income for the year was less than $750. This they have failed to do and the exemption claimed for Foe, Jr. must be denied. The second issue is *20 whether petitioners are entitled to certain itemized deductions in excess of those allowed by respondent. The burden of proof rests upon petitioners. . Petitioners' testimony was sufficient to convince us that they incurred expenditures in 1972 for shoes and gloves. The exact amount is not in evidence but we find $25 to be a reasonable amount. . With respect to the other items petitioners' testimony was vague and they were unable to produce receipts for any of the claimed expenditures. We hold that they have failed to carry their burden. Decision will be entered under Rule 155.* Footnotes
1. Petitioners claimed and respondent disallowed other itemized deductions which were subsequently conceded in full. Since they are not in issue they have been omitted.↩
2. SEC. 151. ALLOWANCE OF DEDUCTIONS FOR PERSONAL EXEMPTIONS. (a) Allowance of Deductions.--In the case of an individual, the exemptions provided by this section shall be allowed as deductions in computing taxable income. * * *
(e) Additional Exemption for Dependents.-- (1) In General.--An exemption of $750 for each dependent (as defined in section 152)--* * *.↩